IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNUM LIFE INSURANCE COMPANY | : | |
| OF AMERICA, et al., | : | No. 13-6900 |
| Defendants. | : | |

**MEMORANDUM OPINION**

      Plaintiff Jane Doe and Defendant Unum Life Insurance Company of America have filed cross-motions for summary judgment on Doe's claims that Unum improperly denied her long-term disability ("LTD") benefits, under a plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA").  I grant Doe's motion and deny Unum's motion and remand the case to Unum for further administrative proceedings.

I.      Background

      Doe, who has a bachelor's degree in chemical engineering, began working for West Pharmaceutical Services, Inc. as a validation process engineer in 2001.  R. at 443-44, 447-49.[1]  Although she left West in 2003 to work for a different employer, she returned to West in 2007.  See id.  As a West employee, Doe participated in a short-term disability plan ("STD") funded by West and administered by Unum and a LTD plan (the "Plan") funded and administered by Unum.  See Unum's Ans. (doc. 8) ¶¶ 1, 8, 9.

      Doe has a history of anxiety and depression and stopped working for West in September 2010 because of those conditions.  R. at 148, 177, 187.  Doe sought treatment from Dr. Virginia Keeler, psychiatrist Manisha Kamat, and psychologist Deborah Chauncey, Ph.D. during this time

---

[1]      The parties have agreed that the record includes the three volumes of exhibits filed by Unum.  See Pl.'s S.J. Br. (doc. 21-1) at 1.

for her conditions.[2]  See id. at 58-59, 76-85, 256-58, 346-51.  Doe also suffered from periodic gastrointestinal problems and was hospitalized in October and November 2010 for these issues.  See id. at 270-72, 281-83.

Doe sought both STD and LTD benefits from Unum for her absence from work and inability to return to her position.  Unum approved Doe's STD claim for the maximum period of 26 weeks through March 9, 2011.[3]  See Compl. (doc. 1) ¶¶ 16, 18, Ans. ¶¶ 16, 18.  On December 8, 2010, however, West terminated Doe in the midst of her disability leave.  Ans. ¶ 7. Unum informed Doe that her dismissal also triggered the loss of STD benefits she had been awarded.  See Compl. ¶ 20, Ex. C, 2/9/2011 Letter, R. at 719.

Doe continued psychiatric treatment with Drs. Keeler, Kamat, and Chauncey, who found that Doe was less anxious since her termination from work, although she had some financial worries and anger and frustration with West.[4]  Those doctors also found Doe could not return to

---

[2]  Doe saw Dr. Keeler four times in the fall of 2010 complaining about anxiety related to work.  R. at 76, 79, 82, 256.  Dr. Keeler diagnosed Doe with anxiety, depression, and insomnia, and prescribed various medications.  Id. at 76-77, 79-80, 82-84, 256-58.  Dr. Keeler also found Doe could not work.  Id. at 53, 77, 80, 82, 257.

Doe saw Dr. Kamat every two weeks beginning on October 12, 2010.  See id. at 346-51.  Doe told Dr. Kamat about experiencing stress from her work situation and Dr. Kamat diagnosed Doe with an adjustment disorder with depressed mood and anxiety.  Id. at 348, 351.  Dr. Kamat also prescribed Doe medication for her conditions.  See id. at 346-51.

Doe began seeing Dr. Chauncey on a bimonthly or monthly basis in April 2006 for depression and anxiety.  Id. at 58.  In an October 2010 letter, Dr. Chauncey diagnosed Doe with double depression, both dysthymic disorder and major depressive disorder, and being highly anxious.  Id.  Dr. Chauncey further opined that Doe was unable to return to work because it could "precipitate a crisis in which she would become even more depressed" and/or she may "'snap' at work in a way that would threaten her job."  Id. at 59.

[3]  West offers its STD plan for when an employee is unable to work due to an extended illness.  See Compl., Ex. A.

[4]  In January 2011, Dr. Chauncey noted Doe's work termination caused her "considerable emotional and financial stress."  R. at 165; see also id. at 166 (noting Doe was experiencing

her position at West because of the stress and anxiety.  See id. at 166-67, 453, 471.  During this time, Doe continued to have gastrointestinal problems.  See id. 343, 456, 470, 545-55.  In January 2011, Doe began two online teacher certification classes through Drexel University.  See id. at 344.

On May 11, 2011, Unum denied Doe's request for LTD benefits.  See id. at 647-49.  Unum concluded that the medical information provided by Doe's doctors, as well as by doctors who had reviewed Doe's records for Unum, did not establish that she was "precluded from the material and substantial duties of [her] occupation" through March 7, 2011, the date on which her LTD benefits could begin.  Id. at 648-49.  Unum explained that Doe's mental "symptoms, impairment and treatment intensity [were not] consistent with a psychiatric impairment beyond January 13, 2011" because "as of that date" both Drs. Keeler and Kamat "were documenting significant symptom and functional improvement."  Id. at 648.  Unum additionally stated that although Doe had been hospitalized and received treatment for gastrointestinal symptoms, those conditions did not preclude her from performing her work duties as of January 14, 2011.  Id. at 649.

Doe appealed and provided additional documentation in support of her mental and physical impairments, including evidence of a total hysterectomy in late June 2011.  Id. at 772-77, 787-800, 831-43.  Unum referred Doe's files to psychiatrist Peter Brown, who concluded,

---

financial uncertainty and worry about being charged with voluntarily leaving her job).  Around the same time, Dr. Keeler found Doe was less nervous, her work termination had brought her closure, and she felt like a huge burden had been lifted off her shoulders.  Id. at 344.  During a subsequent visit, however, Dr. Keeler found that Doe was frustrated and angry with West, although she had reported that she could not return to any corporate work place because of her prior work experiences and stress.  Id. at 343. In January 2011, Dr. Kamat found Doe had less anxiety since her termination, but had financial worries.  Id. at 472.  In March 2011, Dr. Kamat noted Doe had a "[m]arked improvement in [her] anxiety and depression just by not being at work."  Id. at 470-71.

based on his review of the medical records and his discussions with Doe's treating doctors, there was inadequate support for an impairment due to mental illness that would prevent Doe from "performing consistent, sustainable work" after September 9, 2010. <u>Id.</u> at 861. At the same time, however, Dr. Brown found there was support for an "occupationally precluding impairment" from September 9, 2010 until March 28, 2011 "based on the severity of symptoms and the need to establish an effective treatment regimen." <u>Id.</u> Dr. Brown and another consulting physician also determined that Doe was restricted from working for approximately 90 days after her hysterectomy or until September 30, 2011. <u>Id.</u> at 902, 918.

On February 6, 2012, Unum partially reversed its prior decision by finding Doe was entitled to LTD benefits from March 8, 2011 to September 30, 2011. <u>Id.</u> at 911-17. Relying primarily on Dr. Brown's analysis, Unum found that Doe did not have psychiatric work restrictions beyond March 28, 2011. <u>Id.</u> at 912-14. Unum further found that although Doe had various physical ailments between October 2010 and June 2011, she recovered from those conditions by September 30, 2011. <u>Id.</u> at 914. Accordingly, Unum found Doe could perform "the duties of her own occupation" as of October 1, 2011, and was no longer disabled as of that date. <u>Id.</u>

Doe appealed and provided additional documentation related to her psychiatric impairment. <u>See id.</u> at 956-59, 964. Unum again referred the matter to Dr. Brown, who found the new documents failed to show Doe had work restrictions or limitations beyond September 30, 2011. <u>See id.</u> at 973-76. Based primarily on Dr. Brown's findings, Unum denied Doe's appeal on March 12, 2012, and affirmed its previous decision to allow Doe LTD benefits only through September 30, 2011. <u>See id.</u> at 980-82.

II.     Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a reasonable jury could hold in the nonmovant's favor on a fact that would affect the outcome of the suit, summary judgment must be denied. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence and any inferences from the evidence must be viewed in the light most favorable to the non-moving party. See Ray v. Warren, 626F.2d 170, 173 (3d Cir. 2010).

Where a disability plan governed by ERISA grants its administrator discretionary authority to award benefits, the administrator's decision is reviewed only for an abuse of discretion. See Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)). The administrator's decision may be reversed only if it was "arbitrary and capricious" or "without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller v. American Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011).

I must weigh a myriad of factors in evaluating a plan administrator's exercise of discretion, see Glenn, 554 U.S. at 116-17; Funk v. CIGNA Group Ins., et al., 648 F.3d 182, 190 (3d Cir. 2011), including whether: (1) the administrator's decision is reasonably consistent with the unambiguous plan language, see Fleisher v. Standard Ins. Co., 679 F.3d 116, 121 (3d Cir. 2011); (2) there were any procedural irregularities in the review process, see Miller, 632 F.3d at 845; and (3) an administrator's potential conflict of interest in deciding whether benefits are proper under a plan that it funds, see Glenn, 554 U.S. at 116-17; Funk, 648 F.3d at 190.

III.  Discussion

Doe argues that Unum abused its discretion by failing to consider whether she could perform the material and substantial duties of her validation engineer position at West based on her psychiatric conditions,[5] as required by the unambiguous Plan language.  Doe explains Unum did not discuss her job duties in any of its LTD decisions and failed to provide any information to its consulting doctors about her job duties or ask them about her ability to perform such duties.  Doe further cites several other factors to establish Unum's decision was arbitrary, including Unum's selective reliance on evidence, ignorance of concerns expressed by her treating physicians, conflict of interest as the entity that funds and administers the Plan, and inconsistent decisions.

Unum, however, maintains its decision was reasonably based on a comprehensive analysis of Doe's medical records and the opinions of five consulting doctors.  Based on a review of Doe's medical records, Unum's consulting doctors concluded that Doe did not have an ongoing psychiatric impairment because her condition improved in early 2011.  Unum also asserts that because it concluded Doe "did not have disabling restrictions after March 28, 2011," there was no reason for it to consider whether she could perform her validation engineering duties, which she was able to perform before her depressive episode in the fall of 2010.  Unum's S.J. Br. (doc. 20-1) at 23.

Unum has "discretionary authority to make benefit determinations," R. at 144, and "to interpret the terms and provisions of the policy, id. at 102.  An eligible employee is entitled to 24 months of payments for a disability "when Unum determines that [the employee is] limited from performing the material and substantial duties of [her] regular occupation due to [her] sickness or

---

[5]  Doe is not challenging Unum's conclusions related to her physical ailments.

6

injury,"[6] and has 20% or more loss in indexed monthly earnings "due to the same sickness or injury."[7] Id. at 113.  Regular occupation is defined as "the occupation [the employee was] routinely performing when [her] disability [began]." Id. at 136.  Unum must look at the employee's "occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." Id.  Material and substantial duties means the duties "normally required for the performance of [the employee's] regular occupation" and "cannot be reasonably omitted or modified." Id. at 134.

Reasonableness Based on the Unambiguous Plan Language

The unambiguous Plan language requires Unum to determine whether Doe could perform the material and substantial duties of her regular occupation in assessing whether she was disabled.  See id. at 113.  This was Doe's position as a validation process engineer at West.  See id. at 187, Doe's S.J. Br. at 3; Unum's S.J. Br. at 1.

The material and substantial duties of a validation process engineer are the necessary duties normally required for performing the job.  See R. at 134.  In March 2011, West provided Unum with a validation process engineer job description, which described nine principal functions for the job, including writing and executing validations for equipment, providing training and guidance, developing and implementing plans to keep equipment in compliance with appropriate regulations, developing new technologies to improve operations, designing experiments to stress the capability of current processes, and traveling to domestic facilities for project management.  Id. at 247.

---

[6]   After 24 months, an eligible employee is entitled to benefits if Unum determines that the employee is unable to perform the duties of any gainful occupation for which she is fit by education, training, or experience, because of the same sickness or injury.  R. at 113.  Because Doe is not seeking LTD benefits beyond 24 months, this provision is not at issue.

[7]   There is no dispute that Doe had 20% or more loss in indexed monthly earnings.

Based on this information, as well as information provided by Doe, Unum's vocational consultant determined that the material and substantial duties for a validation process engineer included: (1) developing and executing validation protocols for processes and equipment to produce products meeting internal and external purity, quality, and safety standards; (2) developing validation protocols and summary reports; (3) coordinating the scheduling and execution of validation protocols to complete all required activities and projects, including installation, operational, and performance qualification validation, process validation, cleaning validation, and/or equipment qualifications; (4) developing and modifying validation policies and standard operating procedures; (5) conducting internal audit inspections; (6) recommending corrective action when deviations are observed; and (7) maintaining current knowledge of regulatory requirements and guidelines in the area of validation.[8] Id. at 359.

Unum did not reference any of these "material and substantial duties," or any duties related to Doe's Validation Engineer position, in its denial of LTD benefits. See id. at 647-52, 911-17, 980-82. Similarly, none of Unum's consulting doctors considered Doe's job duties in concluding she was not mentally disabled.

Unum posed only the following two questions to Dr. Brown, the doctor Unum relied on in its February and March 2012 decisions: (1) "Does the medical information support impairment due to mental illness that would prevent [Doe] from performing consistent, sustainable work from 9/9/10 to the present?" (2) "Does the medical evidence support

---

[8] According to O*Net Online, an occupational resource sponsored by the Department of Labor and relied upon by Unum's vocational consultant, a validation engineering job requires: evaluating information to determine compliance with standards; communicating with supervisors, peers, or subordinates; getting information; analyzing data or information; identifying objects, actions and events; monitoring processes, materials, or surroundings; processing information; interacting with computers; making decisions and solving problems; and documenting/recording information. O*Net Online, http://www.onetonline.org/link/summary/17-2199.02 (last visited Oct. 31, 2014).

impairment from the whole person standpoint that would prevent [Doe] from sustained function at the level described below as of 9/9/10 to the present?" Id. at 972, 975; see also 851, 858. Dr. Brown was not given any description of Doe's job duties to answer these questions. See id. Instead, the record shows that, at most, Dr. Brown may have been told that the "physical demands" of the job included: exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly; and occasional standing, walking, depth perception, accommodation, color vision; frequent sitting, reaching, talking, handling, fingering, keyboard use, and hearing, near acuity. Id. at 871.

      Doe's Validation Engineer position involved much more than physical duties. As demonstrated by West's own job description and the findings of Unum's vocational consultant, the position involved multiple intellectual, oral, written, social, and organizational duties. See supra at 8. Unum's failure to consider any of these "material and substantial" duties, as required by the unambiguous Plan language, establishes that its decision "was not reasoned and based on an individualized assessment of [Doe's] abilities" in light of her ailments. Miller, 632 F.3d at 855; see also id. ("it is essential that any rational decision to terminate disability benefits under an own-occupation plan consider whether the claimant can actually perform the specific job requirements of a position"); Kuntz v. Aetna, Inc., No. 10-0877, 2013 WL 2147945, at * 10 (E.D. Pa. May 17, 2013 ) ("failure to address how Kuntz was expect to perform the duties of her job given her ailments also supports a finding that the denial of benefits was unreasoned"); Loomis v. Life Ins. Co. of N. America, No. 09-3616, 2011 WL 2473727, at *6 (E.D. Pa. June 21, 2011) (denial of benefits was abuse of discretion where administrator did not evaluate whether plaintiff could perform specific job demands of former position, as required by policy); Simon v. Prudential Life Ins. Co., No. 10-4286, 2011 WL 2971203, *5 (D. N.J. July 20, 2011)

(termination of benefits was arbitrary and capricious where administrator "did not sufficiently consider whether Plaintiff could actually perform all of the specific job requirements of his actual occupation"); Weiss v. Prudential Ins. Co., 497 F. Supp. 2d 606, 616 (D. N.J. 2007) (denial of benefits was arbitrary and capricious because based on unreasonable interpretation of term "regular occupation").

Unum contends that consideration of Doe's occupational duties was not required because it concluded that she had no psychiatric impairment that could interfere with her ability to work. See Unum Opposition Br. (doc. 22) at 5.  The Plan, however, required Unum to base its disability determination on Doe's ability to perform the material and substantial duties of her Validation Engineer position, not on the presence of an impairment.  R. at 113.  In any event, Unum did not base its decision on the absence of a psychiatric impairment.  Rather, it found that Doe had a psychiatric impairment that affected her ability to work until March 28, 2011, but denied benefits after that date because her psychiatric "disability," i.e., her ability to work, ended.[9]  See R. at 981; see also Def.'s S. J. Br. at 4, n.1 ("while Unum agreed that Doe had psychiatric problems, the parties dispute the extent to which her problems were *disabling*," i.e. "prevented her from being able to perform her occupational duties as contemplated by the Plan").  Unum's failure to consider Doe's material and substantial duties cannot be excused because it determined that she lacked a psychiatric impairment.

Consideration of Evidence

"Plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."  Black & Decker Disability Plan v.

---

[9] Dr. Brown's opinions were similarly based on Doe's ability to work, rather than the absence of any psychiatric impairment.  See R. at 861 (finding inadequate support for impairment due to mental illness that would prevent Doe from working).

10

Nord, 538 U.S. 822, 834 (2003). A plan administrator, however, is not required to accord a treating physician any special weight. Id. An administrator is entitled to credit reliable evidence that conflicts with a treating physician's evaluation. Id.; see also Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 258 (3d Cir. 2004) ("A professional disagreement does not amount to an arbitrary refusal to credit.").

Unum reviewed many of the findings by Doe's treating physicians, including their opinions that Doe could not return to her position at West because of the high stress level and her decreased frustration tolerance. R. at 648-49, 912-14, 981. Unum further noted that Doe's condition had improved after she was fired by West, as shown by her good grades in two online teacher certification courses.[10] See id. at 914. Based on this improvement and Dr. Brown's findings, Unum determined Doe was not disabled from performing "the duties of her own occupation as of October 1, 2011." Id. Doe claims Unum failed to address the stressful nature of her position and how returning to that environment would cause her condition to deteriorate, as expressed by her treating doctors. Although Unum could credit Dr. Brown over Doe's treating doctors, its decision had to be based on Doe's ability to perform her material and substantial job duties. See id. at 113. Unum could not simply conclude that Doe was not disabled based on Dr. Brown's opinion when neither it nor Dr. Brown considered her validation engineering job duties. Thus, Unum's reliance on her improved condition and Dr. Brown's opinion without any

---

[10] In its briefs, Unum contends that because Doe's condition improved after she was terminated from West, her alleged problems were specific to West and would not affect her ability to perform her validation engineering position in the national economy. Def.'s S.J. Br. at 23; see also id. at 6. Unum, however, did not offer this as a reason for denying benefits in its denial letters; Unum never considered the material and substantial duties of a validation engineer in the national economy. See R. at 647-52, 911-17, 980-82.

11

additional analysis of her ability to perform her job duties also suggests that Unum abused its discretion.[11]

### Conflict of Interest

Unum concedes that it had a conflict of interest "as both an administrator deciding claims and an insurer paying benefits." Unum's S.J. Br. at 19. Nevertheless, it asserts that this factor should be given "slight weight" and not alter the outcome because Unum's decision was plainly reasonable. See id. at 20. The significance of Unum's conflict of interest turns on "the degree to which it actually 'affected the decision to deny benefits.'" Pini v. First Unum Life Ins. Co., 981 F. Supp. 2d 386, 408 (W.D. Pa. 2013) (citing Howley v. Mellon Financial Corp., 625 F.3d 788, 794 (3d Cir. 2010)). Here, the extent or effect of Unum's conflict of interest is not evident from the parties' briefs or the record. The conflict, therefore, "weighs somewhat" in Doe's favor, but is not a determinative factor. See id.

### Inconsistent Decisions

Unum issued several different decisions related to Doe's disability with different results. For example, Unum initially approved Doe's STD claim for benefits through March 9, 2011. See Comp. ¶ 18; Ans. ¶ 18. Unum then notified Doe that her STD benefits would be stopped as of December 8, 2010 because of her termination from work. See Compl. ¶ 20, Ex. C. Unum subsequently issued its first LTD decision, denying Doe LTD benefits and finding, based on a consulting doctor's review of her records, that she did not have a psychiatric impairment beyond January 13, 2011. R. at 648. Unum, however, later concluded on appeal, and based on a new review of the records by Dr. Brown, that Doe had psychiatric work limitations until March 28,

---

[11]   Doe also argues that Unum improperly relied on her good grades in online teaching certification classes in concluding that she was no longer disabled. Unum, however, could rely on such evidence if it was reflective of Doe's ability to perform her validation engineering job duties.

2011.  Id. at 914, 981.  This final decision is consistent with Unum's initial STD decision, which found Doe disabled until March 9, 2011.  Moreover, Unum's decisions are not inconsistent or unreasonable because Unum relied on some new and different information in each decision.  See Miller, 632 F.3d at 848 (administrator's reversal of decision without any new medical information counsels towards finding an abuse of discretion).  Thus, this factor does not weigh against Unum.

      Weighing of Factors and Remedies

Because the first two factors suggest Unum's decision was unreasonable based on the terms of the Plan and the conflict of interest third factor must be weighed slightly against Unum, Unum abused its discretion in finding Doe was entitled to LTD benefits for her psychiatric problems only until March 28, 2011.

      "When benefits have been improperly denied, a district court has discretion to 'either remand the case to the administrator for a re-evaluation of the claim or retroactively award benefits.'"[12]  Farina v. Temple Univ. Health Sys. Long Term Disability Plan, No. 08-2473, 2009 WL 1172705, at *15 (E.D Pa. July 1, 2010) (quoting Addis v. Limited Long-Term Disability Plan, 425 F. Supp. 2d 610, 620 (E.D. Pa. 2006)); see also Miller, 632 F.3d at 856-57.  A remand is appropriate if the case involved a misinterpretation of the plan language or application of the wrong standard.  See Addis, 425 F. Supp. 2d at 620; see also Weiss, 497 F. Supp. 2d at 615 (remanding case where decision was based on unreasonable interpretation of term "regular

---

[12] Where an administrator improperly terminates benefits, the claimant's benefits should be retroactively reinstated to restore the "status quo" before the administrator's improper decision. Miller, 632 F.3d at 856-67.  Because Unum's decision primarily addressed whether Doe was entitled to LTD benefits, rather than whether her previously granted LTD benefits should be terminated, Unum's decision must be viewed as a denial of benefits, even though Doe was granted benefits for a limited period of time.

occupation"). A remand, however, is unnecessary where the claimant would have received benefits if the administrator acted appropriately. See Addis, 425 F. Supp. 2d at 620.

Doe asserts that her benefits should be retroactively reinstated. I disagree. The better course is to direct Unum to re-evaluate Doe's claim pursuant to the unambiguous Plan language. The evidence does not clearly establish that Doe was limited from performing the material and substantial duties of a validation engineer as that position is performed in the national economy.[13] Although Dr. Chauncey considered Doe's validation engineering job duties, none of the other doctors addressed them. There also is some evidence that Doe's psychiatric issues were related solely to her position at West and, therefore, she may be able to work as a validation engineer in another less stressful environment. See R. at 343, 470-71, 626, 752-53. At the same time, there was evidence that she had problems with concentration and that the multiple duties required for a validation engineer would be too stressful for her. See id. at 456, 470-71, 768. These issues can be fully assessed on remand.

An appropriate Order follows.

---

[13] For the same reason, Unum's procedural errors were not harmless. See Loomis, 2011 WL 2473727, at *6 ("When there is an 'abundance of evidence' in support of a plan administrator's decision, a reviewing court may disregard, or at least weigh less heavily, the administrator's procedural errors or financial conflict of interest.").